[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12375
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-20119-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW NELSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 7, 2019)

Before WILLIAM PRYOR, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Andrew Nelson appeals his convictions for one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); six counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and six counts of brandishing a firearm in furtherance of a crime of violence, in violation of the Armed Career Criminal Act, 18 U.S.C. § 924(c).  On appeal, he argues that his convictions under § 924(c) are invalid because Hobbs Act robbery is not a "crime of violence" under the ACCA's elements clause, § 924(c)(3)(A), and because the ACCA's residual clause, § 924(c)(3)(B), is unconstitutionally vague.  Mr. Nelson also contends that the district court erred by denying his attorney's request for additional time to prepare for trial and by denying his motion for a mistrial.  Because Mr. Nelson's challenges to his § 924(c) convictions are foreclosed by precedent, and because Mr. Nelson cannot show that he was prejudiced by the district court denying his motions for a continuance and mistrial, we affirm.

## I

We review the district court's application of § 924(c) de novo.  *See United States v. Tate*, 586 F.3d 936, 946 (11th Cir. 2009).  Under the prior-panel-precedent rule, however, we are bound by our prior decisions unless and until they are overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

The ACCA provides for mandatory minimum sentences for any defendant who uses or carries a firearm during a crime of violence or a drug-trafficking crime. *See* § 924(c)(1). For the purposes of the ACCA, "crime of violence" means an offense that is a felony and

> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3)(A), (B). We commonly refer to § 924(c)(3)(A) as the "elements clause," and § 924(c)(3)(B) as the "residual clause." *See, e.g.*, *Ovalles v. United States*, 905 F.3d 1231, 1234 (11th Cir. 2018) (en banc).

On appeal, Mr. Nelson contends that his convictions do not qualify as crimes of violence under either the elements clause or residual clause. First, Mr. Nelson argues that Hobbs Act robbery is not a crime of violence under § 924(c)'s elements clause because it can be committed without the use, attempted use, or threatened use of force. He also argues that, because the prosecution alternatively pursued an aiding and abetting theory, his convictions must be construed as being for aiding and abetting Hobbs Act robbery—which does not qualify under § 924(c)'s elements clause. Second, Mr. Nelson argues that § 924(c)'s residual clause is unconstitutionally vague under the Supreme Court's rulings in *Johnson v. United*

3

*States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). These arguments are foreclosed by binding precedent. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302–04 (11th Cir. 2001).

After the parties briefed this appeal, we decided *Ovalles v. United States*, 905 F.3d 1231, 1252–53 (11th Cir. 2018) (en banc), and held that the Supreme Court's decisions in *Johnson* and *Dimaya* did not render § 924(c)'s residual clause unconstitutionally vague. We reasoned that the constitutional-doubt canon of statutory construction required us to apply § 924(c)'s residual clause using a conduct-based approach, as opposed a categorical approach, considering the "actual, real-world facts of the crime's commission" to determine whether a defendant's crime qualifies under the residual clause. *Id*. at 1253. We subsequently applied the rule from *Ovalles* in *United States v. St. Hubert*, 909 F.3d 335, 344–45 (11th Cir. 2018), concluding that the defendant's vagueness challenge to § 924(c)'s residual clause failed. Applying the conduct-based approach, we concluded that the defendant's Hobbs Act robbery conviction was as a "crime of violence" under the residual clause because he brandished a firearm during a robbery and threatened to shoot store employees. *See id*. at 345.[1]

---

[1] We acknowledge that the Supreme Court recently granted certiorari to review whether § 924(c)'s residual clause is unconstitutionally vague in light of *Johnson* and *Dimaya*. *See United States v. Davis*, 903 F.3d 483 (5th Cir. 2018), *cert. granted*, No. 18-431, 2019 WL 98544 (U.S. Jan. 4, 2019). But the constitutionality of § 924(c)'s residual clause does not control the outcome of this appeal because we also conclude that Mr. Nelson's Hobbs Act robbery convictions qualify as crimes of violence under § 924(c)'s elements clause. For the same reason, we need not apply the

In *St. Hubert* we also concluded that—even if *Johnson* and *Dimaya* invalidated § 924(c)'s residual clause—the defendant's § 924(c) challenge failed because we had previously held that Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause. *See id*. at 345 (*citing In re Saint Fleur*, 824 F.3d 1337, 1340–41 (11th Cir. 2016)). We then went on to cite *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016), which held that aiding and abetting Hobbs Act robbery similarly qualifies as a crime of violence under § 924(c)'s elements clause because a person convicted of aiding and abetting an offense is punishable as a principal, and nothing in § 924(c) suggested that Congress intended to limit aiding and abetting liability. *See St. Hubert*, 909 F.3d at 345.

On appeal, Mr. Nelson acknowledges our decisions in *Colon* and *Saint Fleur*, but contends that they are not binding here because both were rulings on applications to file a second or successive 28 U.S.C. § 2255 motion, as opposed to direct appeals, and were decided without full briefing. This argument is also foreclosed by *St. Hubert*. There, we explicitly determined that the decisions in *Saint Fleur* and *Colon* are binding, despite being rulings on second or successive applications. *See* 909 F.3d at 346 ("Lest there by any doubt, . . . law established . . . in the context of applications for leave to file second or successive § 2255 motions is binding precedent on <u>all</u> subsequent panels of this court[.]") (emphasis in original).

---

conduct-based approach from *Ovalles*, 905 F.3d at 1253.

5

Because Mr. Nelson's challenges to his § 924(c) convictions are foreclosed by *St. Hubert*, *Ovalles*, and *Colon*, we affirm his convictions on those grounds.

## II

We review the district court's the denial of Mr. Nelson's motion to continue his trial date for an abuse of discretion.  *See United States v. Bergouignan*, 764 F.2d 1503, 1508 (11th Cir. 1985).  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case[.]"  *United States v. Valladares*, 544 F.3d 1257, 1262 (11th Cir. 2008) (per curiam) (quoting *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995)).  To obtain reversal due to the denial of a continuance, however, the defendant "must show that the denial . . . resulted in specific substantial prejudice."  *Bergouignan*, 764 F.2d at 1508.  "To make such a showing, [the defendant] must identify relevant, non-cumulative evidence that would have been presented if his request for a continuance had been granted."  *United States v. Saget*, 991 F.2d 702, 708 (11th Cir. 1993).  If the defendant fails to proffer evidence or theories that would have been presented had he been granted a continuance, he has not shown specific substantial prejudice.  *See United States v. Gibbs*, 594 F.2d 125, 127 (5th Cir. 1979) (per curiam).

Here, the district court granted Mr. Nelson's motion to discharge his original defense counsel and appointed new counsel on December 5, 2016.  To allow Mr.

Nelson's new attorney to get up to speed, the district court continued Mr. Nelson's trial for seven weeks, until January 23, 2017.  On January 12, 2017, Mr. Nelson's new attorney moved to continue the January 23 trial date to allow him more time to review evidence and prepare for trial.  The district court denied that motion, citing the numerous times that the trial had already been continued.

In our view, the district court did not commit reversible error by denying Mr. Nelson's motion for a continuance.  Forty-nine days is a relatively short period of time to prepare a defense when a defendant faces life in prison, and we acknowledge that the government requested most of the prior continuances in this case.  But even if we are inclined to agree that a continuance was warranted, Mr. Nelson does not point to any relevant, non-cumulative evidence that he would have presented if the court had granted the continuance.  *See Valladares*, 544 F.3d at 1264–65.  Facing similar circumstances, we have repeatedly held that a district court does not abuse its discretion by denying a defense's motion for a continuance if the defendant fails to establish specific substantial prejudice.  *See id.* (concluding that the district court did not abuse its discretion by denying a continuance with only thirty-five days prepare for trial); *Saget*, 991 F.2d at 708 (affirming the denial of a continuance where the defense was only allowed fourteen days to review new evidence); *United States v. Gossett*, 877 F.2d 901, 905–06 (11th Cir. 1989) (per curiam) (affirming the denial of a seven-day continuance where the defense was allowed twenty-three days to

prepare for trial); *Gibbs*, 594 F.2d at 126–27 (affirming the denial of a continuance where the defense was allowed approximately one month to prepare for trial).

On appeal, Mr. Nelson argues that the fact that his second attorney was not permitted enough time to review "hundreds of hours of jail phone calls" establishes that he was substantially prejudiced.  The possibility that Mr. Nelson's counsel may have found additional evidence if the district court had granted a continuance, however, does not establish prejudice.  *See United States v. Perez*, 473 F.3d 1147, 1150–51 (11th Cir. 2006) (per curiam) (affirming the denial of a continuance to review recordings because the defendant "present[ed] no reason why further review would have revealed" exculpatory evidence).  Because Mr. Nelson does not identify any specific evidence that he would have presented at trial if the district court had allowed his counsel more time to review the phone recordings, we cannot say that the district court abused its discretion.

## III

Like the denial of a continuance, we review the district court's denial of Mr. Nelson's motion for a mistrial for an abuse of discretion.  *See United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012).  To justify a mistrial, the defendant must show substantial prejudice—i.e., "a reasonable probability that, without the improper event, *the result of the trial would have been different*."  *See United States*

*v. Barsoum*, 763 F.3d 1321, 1340 (11th Cir. 2014) (emphasis added). Mr. Nelson fails to meet this high standard.

At trial, Mr. Nelson's attorney cross-examined one of the alleged robbery victims. When the attorney attempted to discredit the victim's identification of Mr. Nelson, the witness became agitated, started cursing, accused the attorney of lying, and accused the attorney of unfairly implying that he (the witness) was lying. *See* D.E. 372 at 212. After the district court excused the jury, the attorney moved for a mistrial, arguing that Mr. Nelson could no longer receive a fair trial after the government's only non-cooperating eyewitness made such accusations, used "opprobrious language," and failed to respond to questions. *Id.* at 214–15. The district court denied the motion.

The function of defense counsel is essential to due process, and an attorney is entitled to courtesy and respect. *See United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987), *overruled on other grounds by United States v. Watson*, 866 F.2d 381, 385 n.3 (11th Cir. 1989); *Zebouni v. United States*, 226 F.2d 826, 827 (5th Cir. 1955). At the same time, "the trial judge has broad discretion in handling the trial and [we] should restrain [ ] from interposing [our] opinion absent a clear showing of abuse." *McLain*, 823 F.2d at 1460. *See also United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009) ("The district court is in the best position to evaluate

9

the prejudicial effect of a statement or evidence on the jury.") (quotation marks omitted).

We have suggested in past cases that the court or the government disparaging defense counsel in front of the jury may unfairly prejudice the defendant. *See Zebouni*, 226 F.2d at 827–28 (the judge); *McLain*, 823 F.2d at 1462 (the government). Neither party, however, cites a case where a government witness disparaging a defense attorney on cross-examination caused sufficient prejudice to justify a mistrial. In *United States v. De La Vega*, 913 F.2d 861, 867 (11th Cir. 1990), we found no error where a government witness "volleyed" disparaging remarks at the defense attorney on cross-examination because there is "no governmental duty to muzzle prosecution witnesses on cross-examination" and "there are no cases requiring reversal because of disparaging remarks made by witnesses." Moreover, we noted that "the trial judge [in *De La Vega*] labored to minimize and cure this witness's disparaging remarks." *Id. See also Messer v. Kemp*, 760 F.2d 1080, 1087 (11th Cir. 1985) ("Because the trial judge is in the best position to evaluate the prejudicial effect of [an] outburst [by the victim's father], the decision on whether to grant a mistrial lies within his sound discretion.")

In this case, the district court did not abuse its discretion in denying Mr. Nelson's motion for a mistrial. Although our decisions in *Zebouni* and *McLain* suggest that attacks on defense counsel *may* rise to the level of substantial prejudice,

10

those cases dealt with disparagement by the court and the government, not a witness on cross-examination. *Cf. De La Vega*, 913 F.2d at 867.

Mr. Nelson does not otherwise establish substantial prejudice. He has not shown that, without the witness' outburst, there is a reasonable probability that the result of the trial would have been different. *See Barsoum*, 763 F.3d at 1340. It may be true that the witness' accusations and distasteful language prejudiced the jury against Mr. Nelson. But the witness' statements—which the trial judge contemporaneously admonished—could equally have soured the jury against the witness and the prosecution. Moreover, there was ample evidence, aside from this witness' testimony, to establish guilt, including that Mr. Nelson admitted to committing one of the alleged robberies and statements from other cooperating witness.

## IV

For the foregoing reasons, we affirm Mr. Nelson's convictions under § 924(c) and the district court's denial of Mr. Nelson's motions for a continuance and a mistrial.

**AFFIRMED.**

11